FRUGÉ, Judge ad hoc.
Plaintiffs appeal from a trial court judgment dismissing their suit involving an automobile accident which occurred at approximately 9:50 p. m. July 20, 1956 on the Plank Road near its intersection with Hollywood Street on the Plank Road in the city of Baton Rouge, Louisiana.
The accident involved a 1953 Cadillac being operated by the plaintiff, Mrs. Mildred Reed, and a 1950 International two-ton truck or line truck owned by defendant, Gulf States Utilities Company, being operated at the time of the accident by defendant Edward J. Alonzo and insured by defendant, Great American Indemnity Company.
Plaintiffs’ suit is for Mrs. Reed’s personal injuries and Mr. Reed’s medical expenses, automobile damage, and alleged damage for loss of use of the vehicle, all resulting from the accident.
The District Judge for oral reasons assigned rendered judgment against the plaintiffs and in favor of the defendants dismissing plaintiffs’ suit at their cost. Hence, the appeal by plaintiffs.
The issue here is largely one of fact. Our appreciation of the evidence is that the Gulf States line truck and the Reed Cadillac had been traveling in the left or inside lane of Plank Road heading north; that the Plank Road at the point in question was and is a four-lane road, two each for the north and south bound traffic, 24 feet wide on each side of a one-foot center divider strip between north and south bound traffic lanes; that at the point of the accident, Plank Road is completely straight and level and that there are no obstructions to vision; that earlier in the evening there had been a storm with considerable rain, but that with the possible exception of a very light mist or drizzle, it was not raining at the time of the accident; that a Gulf States line truck had been called out at night to go on a trouble call and repair some lines broken by a tree falling during the storm, and had stopped in the left or inside lane for north bound traffic near the intersection of Plank Road with Hollywood Drive west of Plank Road to await the passage of south bound traffic on Plank Road before turning left on Hollywood Drive to proceed west; that while the Gulf States line truck was so stopped, Mrs. Reed was proceeding north along Plank Road in a Cadillac in the left or inside lane and collided with the rear of the Gulf States truck, causing the injuries and damages complained of; that prior to the collision the Cadillac automobile was in good condition, with good headlights, good brakes and practically new tires, and had been traveling with its headlights on; that prior to the point of collision, the Cadillac automobile left 96 feet 11 inches of heavy skid marks before striking the rear of the truck with sufficient force to cause over eight hundred dollars worth of damages to the front of the Cadillac; the skid marks by the Cadillac were straight and continuous up to the point of collision and extended up under the Cadillac past the rear wheels, indicating to the investigating police that the skid marks were made by all four wheels of the Cadillac; that the Gulf States line truck was damaged on its right rear, the water can and water can bracket, the right rear step and the right reflector on the rear of the truck; that Mrs. Reed’s Cadillac was damaged across most of the front, principally on the left side of the front; that the *292 accident occurred within the city limits of Baton Rouge and the posted and applicable speed limit at the time and place of the accident was 40 miles per hour.
It is our appreciation of the evidence that the above could be considered as substantially the true facts. The plaintiffs called ten witnesses with regard to the accident or the circumstances existing at the scene of the accident. Of these five of plaintiffs’ witnesses denied being able to see any type of light whatsoever on the truck, one did notice whether the truck did or did not have any lights and four including both of the plaintiffs themselves recalled seeing nothing but the turn signal indicator or lights on the truck. All of these four witnesses were positive that the turn signal light was an amber color. On the other hand, there were six witnesses testifying on behalf of the utility company. It was pointed out that this truck was fully inspected by two or three of the witnesses, the foreman and the driver and others before proceeding on this trip. They testified positively that all the lights were working on the truck. In addition to the testimony of the company witnesses, one witness by the name of Johnson testified that he was driving south on Plank Road at about 10:00 p. m. of the evening in question and that he saw the truck ahead of him looking like it was going to turn off to the left so that he had to cut down his speed and move over to the left or inside lane of the outside or right hand lane for south bound traffic, and that since the truck was giving a signal for a left turn he did not know whether the truck would turn in front of him or not. He made it clear that he had seen the blinking amber turn signal facing him as he approached the truck and that there was no doubt at all in his mind that as he saw the truck that it was signalling for a left turn. In addition to that, Leo Radelet testified that he had been one of the two investigating policemen who covered the subject accident. He testified that upon reaching there the blinker lights were still on the truck operating. He further testified that the truck was checked and that the truck lights were found on and no defects were noted with regard to the lights. He testified with respect to the lights that there was a red light blinking on the left rear of the truck and that there was also a tail light on the truck. We are convinced from this testimony that the lights were on the truck at the time of the impact. We thus dispose of one of the issues of fact presented. A significant corroborating circumstance to this conclusion is that this truck proceeded on to complete its assignment for the evening from the scene of the accident which shows that all lights on the truck were in working order.
We will now consider the action of Mrs. Reed. According to the standard tables of stopping distances customarily used by the courts, a vehicle traveling 40 miles per hour is under normal conditions expected to stop within a breaking distance of 82 feet. Mrs. Reed slid her brakes hard from 96 feet 11 inches before striking the 18,000 pound truck a sufficiently heavy blow to roll it forward approximately 51 feet. It is obvious that the heavy damage occurring at the end of Mrs. Reed’s protracted skid marks indicates that Mrs. Reed was grossly negligent. She was exceeding the speed limit and not keeping her car under reasonable control, and in failing to see what she could and should have seen and in not making any effort to turn aside and avoid the truck after she became aware of its presence approximately 150 feet before reaching it, we therefore agree with the trial judge on its conclusion of facts and the same will not be disturbed because it is not manifestly erroneous.
Upon the above finding of facts it naturally follows that the cases cited by plaintiffs are inapposite here.
For these and the foregoing reasons, the judgment of the District Court will be affirmed.
Affirmed.